NOT FOR PUBLICATION

# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF NEW JERSEY

_____
:
MICHAEL PETERSON, et al.,          :
                                   :
           Plaintiffs,             :
                                   :   Civil Action No. 08-3041 (JAG)
       v.                          :
                                   :   OPINION
CIMORELLI CONSTRUCTION, a          :
New Jersey Corporation,            :
                                   :
           Defendant.              :
_____:

**GREENAWAY, JR., U.S.D.J.**

This matter comes before this Court on a motion, filed by all plaintiffs,[1] for entry of default judgment against defendant Cimorelli Construction ("Cimorelli"), pursuant to FED. R. CIV. P. 55(b). Plaintiffs seek all damages stemming from alleged violations of Collective Bargaining Agreements, Trust Agreements, and the Employee Retirement Income Security Act

---

[1] Plaintiffs are Michael Peterson, Rudolph Ricciardi, Robert Epifano, Joseph Speranza, Jr., Michael Schmerbeck, Jack Kocsis, Kenneth Simone, John F. Capo, Jeffrey Duffy, Donald Engelhardt, Kevin Duncan, Richard Tolson (collectively, "NJ BAC Health Fund"); James R. Prisco, Jr., Rudolph Ricciardi, Joseph Speranza, Jr., John F. Capo, Jeffrey Duffy, Donald Engelhardt, Leon Jones, Jr. (collectively, the "Apprentice Fund"); John Flynn, James Boland, Gerald O'Malley, Ken Lambert, Gerard Scarano, H.J. Bramlett, Eugene George, Robert Hoover, Matthew Aquiline, Gregory R. Hess, Michael Schmerbeck, Vincent Delazzero, Benjamin Capp, William McConnell (collectively, the Bricklayers & Trowel Trades International Pension Fund (the "IPF"); Jim Allen, Matthew Aquiline, Lon Best, James Boland, Ted Champ, Raymond Chapman, Vincent Delazzero, Bruce Dexter, John Flynn, Eugene George, Gregory Hess, Fred Kinateder, Dan Kwiatkowski, Ken Lambert, Santo Lanzafame, Dick Lauber, William McConnell, Edward Navarro, Gerald O'Malley, John Phillips, Charles Raso, Mark Rose, Kevin Ryan, Gerard Scarano, Michael Schmerbeck, Paul Songer, Jospeh Speranza, Fred Vautour (collectively, the International Masonry Institute ("IMI")); Richard Tolson, the Administrator of BAC Administrative District Council of New Jersey (the "Union") (collectively, "Plaintiffs").

of 1974 ("ERISA").  Plaintiffs also seek interest, liquidated damages, attorneys' fees and costs, court fees, and service fees.  For the reasons set forth below, this Court shall grant the motion for default judgment.

## I. FACTS

Plaintiffs NJ BAC Health Fund and the Apprentice Fund (collectively, "Local 2 Benefit Funds"), the IPF, and the IMI provide employee fringe benefits to members of the Union. (Compl. ¶ 18.)  Local 2 Benefit Funds are multi-employer, labor-management trust funds, organized and operated pursuant to various collective bargaining agreements.  (Id. ¶¶ 4, 7.)  The IPF is a multi-employer, labor-management trust fund, organized and operated, pursuant to various collective bargaining agreements.  (Id. ¶ 10.)  The IMI is an employee benefit plan and multi-employer plan.  (Id. ¶ 13.)   Cimorelli signed a Collective Bargaining Agreement ("CBA") with the Union establishing the terms and conditions of employment for employees of Cimorelli working within the geographical jurisdiction of the Union.  (Id. ¶ 19.)  Pursuant to the CBA, Cimorelli agreed to pay to the Plaintiff Funds fringe benefit contributions and to forward dues checkoffs[2] for each hour worked by employees of Cimorelli covered by the CBA.  (Id. ¶ 20.) Cimorelli neglected to fulfill its statutory and contractual obligations to pay the required fringe benefit contributions to the Funds and to remit dues checkoffs, and other contributions deducted from the wages paid to employees who performed work covered by the CBA.  (Id. ¶ 22.)

---

[2] A checkoff is "[a]n authorized withholding of union dues, fees, fines and assessments from the wages of union members and a turning over of such withheld money over to the union." WEBSTER'S THIRD NEW INTERNATIONAL DICTIONARY 382 (1993).

Cimorelli failed to pay a total amount of at least $12,268.95.[3] (Id. ¶ 23.) On July 8, 2008, Cimorelli paid the delinquent contributions and dues checkoffs to Plaintiff Funds, leaving only unpaid interest, liquidated damages, attorneys' fees and costs which total $4,409.84. (See Decl. of Charles R. Virginia in Supp. of Pls.' Mot. for Default J., dated October 7, 2008 ("Virginia Decl.") ¶¶ 10-36.)

## II. LEGAL STANDARD

FED. R. CIV. P. 55(b)(2) provides:

> In all other cases, the party must apply to the court for a default judgment. A default judgment may be entered against a minor or incompetent person only if represented by a general guardian, conservator, or other like fiduciary who has appeared. If the party against whom a default judgment is sought has appeared personally or by a representative, that party or its representative must be served with written notice of the application at least 3 days before the hearing. The court may conduct hearings or make referrals--preserving any federal statutory right to a jury trial--when, to enter or effectuate judgment, it needs to:
> (A) conduct an accounting;
> (B) determine the amount of damages;
> (C) establish the truth of any allegation by evidence; or
> (D) investigate any other matter.

"The Federal Rules of Civil Procedure commit the entry of a default judgment against a party to the sound discretion of the trial court." F.T.C. v. Packers Brand Meats, Inc., 562 F.2d 9, 10 (8th

---

[3] The $12,268.95 is comprised of: "(1) benefit contributions to the Local 2 Benefit Funds in the amount of $4,681.24, benefit contributions to the IPF and IMI in the amount of $6,229.65 and dues checkoffs to the Union in the amount of $1,175.66 for work performed at McDonald's, Route 13 during the period December 24, 2007 through March 12, 2008; (2) benefit contributions to the Local 2 Benefit Funds in the amount of $69.52, benefit contributions to the IPF and IMI in the amount of $95.20 and dues checkoffs to the Union in the amount of $17.68 for work performed at the Condominium project in Philadelphia on January 7, 2008; and (3) additional amounts for interest and liquidated damages accrued on the principal amounts of contributions owed, plus reasonable attorneys' fees and other costs and expenses incurred in connection with the collection procedures." (Compl. ¶ 23.)

Cir. 1977).

"Default establishes the defaulting party's liability for the well-pleaded allegations of the complaint." U.S. v. Gant, 268 F. Supp. 2d 29, 32 (D.D.C. 2003) (citing Brock v. Unique Racquetball & Health Clubs, Inc., 786 F.2d 61, 65 (2d Cir. 1986)). However, "the quantum of damages remains to be established by proof unless the amount is liquidated or susceptible of mathematical computation." Flaks v. Koegel, 504 F.2d 702, 707 (2d Cir. 1974). "Following the entry of default, a district court can enter a final judgment without requiring further proof of damages only in limited situations." KPS & Associates, Inc. v. Designs By FMC, Inc., 318 F.3d 1, 19 (1st Cir. 2003). For example, "no evidentiary inquiry is necessary if the claim is for a 'sum certain,'" id., or if the claim is based on "an enforceable liquidated damages clause in a contract." Id. at 20. However, beyond these limited situations, "[t]he district court must instead conduct an inquiry in order to ascertain the amount of damages with reasonable certainty." Credit Lyonnais Sec. (USA), Inc. v. Alcantara, 183 F.3d 151, 155 (2d Cir. 1999).

This Court "has considerable latitude in determining the amount of damages." Jones v. Winnepesaukee Realty, 990 F.2d 1, 4 (1st Cir. 1993). In determining the amount, a district court may conduct a hearing. FED. R. CIV. P. 55(b)(2). However, the court is not required to do so "as long as it ensure[s] that there [is] a basis for the damages specified in the default judgment." Transatlantic Marine Claims Agency, Inc. v. Ace Shipping Corp., Div. of Ace Young Inc., 109 F.3d 105, 111 (2d Cir. 1997) (quoting Fustok v. ContiCommodity Services, Inc., 873 F.2d 38, 40 (2d Cir. 1989). "It is familiar practice and an exercise of judicial power for a court upon default, by taking evidence when necessary or by computation from facts of record, to fix the amount which the plaintiff is lawfully entitled to recover and to give judgment accordingly." Pope v.

4

United States, 323 U.S. 1, 65 (1944).

### III.  JURISDICTION

Before the entry of default judgment against a party that has not filed responsive pleadings, "the district court has an affirmative duty to look into its jurisdiction both over the subject matter and the parties."  Williams v. Life Sav. & Loan, 802 F.2d 1200, 1203 (10th Cir. 1986).

#### A.  Subject Matter Jurisdiction

This Court has subject matter jurisdiction over the present case, pursuant to Sections 502(e)(1) and (f), and 515 of ERISA, 29 U.S.C. §§ 1132(e)(1) and (f) and 1145, and § 301(c) of the Labor Management Relations Act, 29 U.S.C., 29 U.S.C. § 185(c). This Court has federal question jurisdiction over this action, pursuant to 28 U.S.C. § 1331, 29 U.S.C. § 185 and 29 U.S.C. § 1132(e)(1).

#### B.  Personal Jurisdiction

Defendant has its principal place of business in Pennsylvania.  Thus, this Court must now consider whether it can exercise personal jurisdiction over Defendant.

To determine if personal jurisdiction is permitted over an out-of-state defendant a federal court first looks to the forum state's long-arm statute.  Miller Yacht Sales, Inc. v. Smith, 384 F.3d 93, 96 (3d Cir. 2004).  In New Jersey, the long arm statute permits the exercise of personal jurisdiction to the fullest limits of due process, as defined under the Constitution of the United States.  Id.  Therefore, in New Jersey, federal law defines the parameters of a court's in personam jurisdiction.  IMO Indus., Inc. v. Kiekert AG, 155 F.3d 254, 259 (3d Cir. 1998).  Thus, this Court must determine whether the exercise of jurisdiction violates the Due Process Clause of the

5

Fourteenth Amendment.  Miller Yacht Sales, 384 F.3d at 96.

The Fourteenth Amendment permits a state to exercise jurisdiction over an out-of-state defendant only where "the defendant purposefully avails itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws."  Burger King Corp. v. Rudzewicz, 471 U.S. 462, 475 (1985) (quoting Hanson v. Denckla, 357 U.S. 235 (1958)).  It is the burden of the plaintiff to prove that the defendant has purposefully availed itself of the forum state.  Burke v. Quartey, 969 F. Supp. 921, 924 (D.N.J. 1997).

To prove that a defendant has purposefully availed itself of the forum state, a plaintiff may rely upon a defendant's specific contacts with the forum state.  The burden to produce actual evidence of the defendant's contacts with the forum state rests on the plaintiff.  Time Share Vacation Club v. Atlantic Resorts, Ltd., 735 F.2d 61, 66 n.9 (3d Cir. 1984).  Personal jurisdiction pursuant to such contacts is known as specific jurisdiction.  Specific jurisdiction is invoked when a claim is related to or arises of out the defendant's contacts with the forum.  Helicopteros Nacionales de Colombia, S. A. v. Hall, 466 U.S. 408, 416 (1984); Dollar Sav. Bank v. First Sec. Bank of Utah, 746 F.2d 208, 211 (3d Cir. 1984).

A court must first determine whether the defendant had the minimum contacts with the forum necessary for the defendant to have "reasonably anticipate[d] being haled into court there." World-Wide Volkswagen Corp. v. Woodson, 444 U.S. 286, 297 (1980).  What constitutes minimum contacts varies with the "quality and nature of defendant's activity."  Hanson, 357 U.S. at 253.  In assessing the sufficiency of minimum contacts for personal jurisdiction, the court must focus on the "relationship among the defendant, the forum, and the litigation."  Keeton v. Hustler Magazine, Inc., 465 U.S. 770, 775 (1984).  There must be at least "a single deliberate contact"

6

with the forum state that relates to the cause of action.  United States Golf Ass'n v. United States Amateur Golf Ass'n, 690 F. Supp. 317, 320 (D.N.J. 1988).  The unilateral acts of the plaintiff, however, will not amount to minimum contacts.  Helicopteros Nacionales de Colombia, 466 U.S. at 414; Hansen, 257 U.S. at 253.  Assuming minimum contacts have been established, a court must inquire whether "the assertion of personal jurisdiction would comport with 'fair play and substantial justice.'"  Burger King Co., 471 U.S. at 476 (quoting International Shoe Co. v. Washington, 326 U.S. 310, 320 (1945)); see also Pennzoil Prod. Co. v. Colelli & Assoc. Inc., 149 F.3d 197, 201 (3d Cir. 1998).

For personal jurisdiction to comport with "fair play and substantial justice," it must be reasonable to require the defendant to defend the suit in the forum state.  World-Wide Volkswagen Corp., 444 U.S. at 292 (1980).  To determine reasonableness, a court considers the following factors: a) the burden on the defendant; b) the forum state's interest in adjudicating the dispute; c) the plaintiff's interest in obtaining convenient and effective relief; d) the interstate judicial system's interest in obtaining the most efficient resolution of controversies; and e) the shared interest of the several States in furthering substantive social policies.  Id.  Only in "rare cases [do the] minimum requirements inherent in the concept of 'fair play and substantial justice' . . . defeat the reasonableness of jurisdiction even [though] the defendant has purposefully engaged in forum activities."  Asahi Metal Indus. Co., Ltd. v. Superior Court of Cal., Solano County, 480 U.S. 102, 116 (1987) (citing Burger King Co., 471 U.S. at 462).

If the plaintiff cannot establish specific jurisdiction, a court may exercise general jurisdiction over the defendant if the defendant has maintained "continuous and systematic" contacts with the forum state.  Helicopteros Nacionales de Colombia, 466 U.S. at 416.  To

establish general jurisdiction, the plaintiff "must show significantly more than mere minimum contacts" with the forum state.  Provident Nat'l Bank v. California Fed. Sav. & Loan Ass'n, 819 F.2d 434, 437 (3d Cir. 1987).  Moreover, the facts required to establish general jurisdiction must be "extensive and persuasive."  Reliance Steel Products Co. v. Watson, Ess, Marshall & Enggas, 675 F.2d 587, 589 (3d Cir. 1982).

In the instant case, Defendant conducted business within New Jersey, (Compl. ¶ 17), entered into agreements with Unions in New Jersey, (id. ¶ 19), and the instant action arises directly from Defendant's conduct in New Jersey, (id. ¶ 23).  As a result of these extensive contacts with the forum state, this Court finds that it can exercise personal jurisdiction over Defendant properly.

## IV.  ANALYSIS

### A.  Default Judgment

Defendants failed to appear, or otherwise plead, in response to the Complaint, which was filed on June 17, 2008 and served on June 30, 2008.  (See Complaint (Docket Entry No. 1) and Executed Summons for Cimorelli Construction (Docket Entry No. 2)).  Defendant failed to respond to the instant motion, despite having been served with the motion on June 30, 2008.  Plaintiff sought the entry of default by the Clerk on September 24, 2008.  The Clerk entered default on September 26, 2008.  This Court finds that default judgment is appropriate, under FED. R. CIV.P.55 (b)(2), on all counts of the Complaint.

### B.  Damages

Plaintiff requests $4,409.84 in damages — comprised of unpaid interest, liquidated

damages, attorneys' fees and costs.[4]  (See Ex. A Invoice submitted to BAC Local 2 Funds and Bricklayers International Pension Fund, dated October 7, 2008.)  In light of the broad discretion that this Court has in determining damages, Jones, 990 F.2d at 4, Plaintiffs will be awarded the full $4,409.84 in damages, representing $507.00 in unpaid interest, $2,215.12 in liquidated damages, $1,206.04 in attorneys' fees, and $481.68 in court and service fees.  (Virginia Decl. ¶¶ 10–36.)

## V.  CONCLUSION

For the reasons set forth above, this Court shall grant Plaintiff's motion for default judgment.

Date: June 1, 2009                             S/Joseph A. Greenaway, Jr.
                                               JOSEPH A. GREENAWAY, JR., U.S.D.J.

---

[4] The attorneys' fees were billed at a rate of $200.00 per hour and the paralegals at a rate of $90.00 per hour.  A total of 6.80 hours were spent on the case, yielding a total of $1,206.04.  These fees along with court fees, service fees and other related costs totaling $481.68 are recoverable under ERISA § 502(g), 29 U.S.C. § 1132.